IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A TRACKING WARRANT AND ORDER PURSUANT TO 18 U.S.C. §§2703 (c)(1)(A), 2703(d), and 3122 FOR: 1) DISCLOSURE OF TELECOMMUNICATIONS RECORDS; 2) DISCLOSURE OF CELL-SITE INFORMATION FOR TELEPHONE NUMBER (346) 349-8624 | Case No. __7:19mj84__<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF APPLICATION

I, Aaron Durham, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a tracking warrant pursuant to Federal Rule of Criminal Procedure 41 for information about the location of the cellular telephone assigned call number **(346) 349-8624** (the "**Target Cell Phone**"), whose service provider AT&T**,** a wireless telephone service provider headquartered at 208 S. Akard Street, Dallas, Texas.

2. I am a Task Force Officer with the Drug Enforcement Administration, and have been since August 2010. I am currently assigned to Enforcement Group 25, Roanoke Resident Office (RRO), of the DEA Washington Division Office. I have received training in all areas of narcotics investigations including search and seizure laws and statutes pertaining to enforcement of the Controlled Substances Act. Since becoming a law

1

enforcement officer in 2000, I have either conducted or assisted other law enforcement officers in conducting numerous narcotics investigations that have resulted in the arrest and conviction of numerous individuals.

3. I have attended classes and courses regarding the importation, transportation, and distribution of illegal drugs. I am knowledgeable about state and federal drug laws. I have participated in a number of drug trafficking, money laundering, and organized crime investigations that have resulted in the arrest of numerous members of several different international and domestic drug trafficking organizations (DTOs) and the seizure of currency, assets, and drugs. Several of these investigations have employed electronic surveillance as an investigative technique, and I have submitted Federal and state affidavits in support of applications for court orders authorizing the use of electronic surveillance. I have participated in many searches of residences and businesses of suspected drug traffickers for evidence of criminal activity. I have also conducted and participated in the debriefing of many drug traffickers and money launderers, through which I have learned valuable information regarding the techniques used by DTOs to distribute drugs in both domestic and international markets. Additionally, I have testified in grand jury proceedings related to the investigation of individuals involved in drug trafficking and money laundering. As a result of my training and experience, I am familiar with the way in which DTOs illegally traffic, transport, and distribute drugs and launder the proceeds derived from their drug distribution activity.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Israel SALGADO-Sosa (hereinafter "SALGADO"), and others, are engaged in a conspiracy to violate federal drug laws—to wit: money laundering, in violation of 18 U.S.C. § 1956; offenses involving the use of communications facilities in commission of narcotics offenses, in violation of 21 U.S.C. § 843(b); and, narcotics trafficking, in violation of 21 U.S.C. § 841(a); as well as the identification of individuals who are engaged in the commission of these offenses. Since this affidavit is being submitted for the limited purpose of securing an Order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation.

6. I respectfully submit that probable cause exists to believe that SALGADO is utilizing the **Target Cell Phone** to violate federal money laundering and drug laws, and that the Requested Information will lead to evidence concerning these offenses. It is believed that SALGADO has conspired with other individuals both within and outside of the Western District of Virginia and has utilized the **Target Cell Phone** in furtherance of their criminal conspiracy.

## PROBABLE CAUSE

7. The United States, including the DEA, HSI, USPS, and the Virginia State Police, is conducting a criminal investigation of Israel SALGADO-Sosa (hereinafter "SALGADO") and other subjects known and unknown regarding possible violations of conspiracy to distribute methamphetamine and cocaine in violation of 21 U.S.C. § 841(a)(1) and §846

3

8. Beginning in February 2018, the DEA Roanoke Resident Office (RRO) and the Virginia State Police (VSP) began a methamphetamine trafficking investigation of Uriel Felipe REYES-Solorio (hereinafter "REYES").  RRO and VSP began conducting controlled purchases of quantities of methamphetamine from REYES in the Western District of Virginia.   In November 2018, a cooperating source (CS 1) who was purchasing methamphetamine from REYES was able to make contact with REYES's methamphetamine Source of Supply in Mexico, identified as Israel SALGADO-Sosa.

9. In December 2018, CS 1 was able to make a controlled drug debt payment to SALGADO in Mexico.  The payment was for approximately one pound of methamphetamine that CS 1 had purchased from REYES in the Western District of Virginia (approximately 500 grams).

10. In March 2019, CS 1 ordered 2 kilograms of methamphetamine directly from SALGADO, having made SALGADO aware that the methamphetamine would be transported for resale into the Western District of Virginia.  From Mexico, SALGADO arranged for CS 1 to pick up the quantities of methamphetamine in Houston, Texas. Using information provided by CS 1, a DEA Houston Task Force Officer (TFO) acting in an undercover capacity met with a drug courier in Houston, Texas and obtained 1,250 grams of methamphetamine, as had been arranged between CS 1 and SALGADO.

11. In May 2019, DEA utilized a second cooperating source (CS 2) to make a drug debt payment directly to SALGADO in Mexico City, Mexico, for the 1,250 grams of methamphetamine that had been picked up in Houston, Texas.

12. CS 1 has been in direct contact with SALGADO on the **Target Cell Phone**.  In June 2019, CS 1 spoke with SALGADO on several different occasions**.**  In one of the

phone conversations between SALGADO and CS 1, SALGADO advised CS 1 that he (SALGADO) had crossed the border into the United States.  CS 1 and SALGADO discussed CS 1 picking up another quantity of methamphetamine from SALGADO in the near future.

13.     In August 2019, SALGADO advised CS 1 that the **Target Cell Phone** number was SALGADO's new cellular telephone number.  The two of them had a phone conversation about CS 1 picking up 2 kilograms of methamphetamine in Houston, Texas, at the direction of SALGADO.

14.     Based upon the information outlined above, I believe that SALGADO is utilizing the **Target Cell Phone** in furtherance of illegal activities. Furthermore, SALGADO has utilized the **Target Cell Phone** in connection with illegal drug distribution in the past month.  And based upon his consistent history of utilizing the **Target Cell Phone**, I believe that SALGADO will continue to utilize the **Target Cell Phone** for at least the next 30 days.

15.     Because the current location of SALGADO and SALGADO's exact travel patterns are unknown to law enforcement at this time, it is believed that access to AT&T location-based services, (the Requested Information) for the cellular number will greatly enhance the ability to locate and track the movement of SALGADO, identify other members of the organization with which SALGADO associates, and possible additional sources of supply (SOS) for this organization.

16.     In August 2019, the DEA RRO issued Administrative Subpoenas for the subscriber and toll history for the **Target Cell Phone** and subsequently received the records.  The subpoena has shown that the **Target Cell Phone** is subscribed to Juan

5

Ramiro with subscriber address listed as 5607 Uvalde Road, Houston, Texas 77049.  The International Mobile Subscriber Identity (IMSI) for the **Target Cell Phone** is 310150721926705.  Based on my training and experience, I know that drug traffickers/money launderers often utilize telephones with false subscriber information to conceal their identity and avoid detection by law enforcement.

17.    In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records**.**  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18.    Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to

6

determine the location of the **Target Cell Phone** on AT&T network or with such other reference points as may be reasonably available.

19. Based on my training and experience, I know that AT&T can collect cell-site data about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from

prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

22.     I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T.  I also request that the Court direct AT&T to furnish the government all I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

/s/ Aaron B. Durham
Aaron Durham
Task Force Office
Drug Enforcement Administration

Received by reliable electronic means and attested to telephonically.
Subscribed and sworn to before me
on August 7, 2019:

*Robert S. Ballou*

Honorable Robert S. Ballou
United States Magistrate Judge